MAIDEN, The (BROWER v.). See Case No. 1,970.

———

## Case No. 8,971.

MAILLARD et al. v. LAWRENCE.

[1 Blatchf. 504;[1] 12 Law Rep. 354.]

Circuit Court, S. D. New York. Oct. Term, 1849.

CUSTOMS DUTIES—SHAWLS—WEARING APPAREL.

1. Shawls or scarfs, manufactured on looms, and in strips or pieces containing several, the place of separation indicated by threads which form, when cut, the fringe, and the articles being actually separated before importation, and being, in the state in which they are imported, suitable and adapted to be worn by women and children as articles of dress, and, at the time of importation, usually so worn, and imported for that purpose, come within the description of wearing apparel, under Schedule C of the tariff act of July 30th, 1846 (9 Stat. 43), and are chargeable with a duty of 30 per cent.

2. By the use of the words "wearing apparel" in the act of 1846, congress intended to make the purpose, adaptation, and use of an article, and not its commercial designation, the test of its dutiable description.

[Cited in U. S. v. Washington Mills, Case No. 16,647; U. S. v. Oppenheimer, 61 Fed. 284.]

This was an action [by Thirion Maillard and others] against [Cornelius W. Lawrence] the collector of the port of New-York, to recover back an excess of duties paid upon shawls and scarfs, composed some of worsted alone, some of silk alone, some of silk and worsted, and some of worsted and cotton. It was tried before Mr. Justice Nelson, in April, 1848. A duty of thirty per cent. was charged upon the articles, as "wearing apparel of every description, of whatever material composed, made up or manufactured wholly or in part by the tailor, sempstress, or manufacturer," under Schedule C of the act of July 30th, 1846. 9 Stat. 45. The plaintiffs claimed that a duty of only twenty-five per cent. should have been charged on the articles, as "manufactures of silk, or of which silk shall be a component material, not otherwise provided for," and "manufactures of worsted, or of which worsted shall be a component material, not otherwise provided for," under Schedule D of the same act. Id. 46. It appeared in evidence that the shawls and

———

1 [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

scarfs were manufactured on looms, and in strips or pieces containing several shawls or scarfs, the place of separation being indicated by threads, which formed, when cut, the fringe, and the articles being actually separated before importation, and being, in the state in which they were imported, suitable and adapted to be worn on the person by women and children, as articles of dress, and, at the time of importation, usually so worn, and imported for that purpose. There was much evidence given for the purpose of showing that the articles were not known in trade and commerce as "wearing apparel." The court charged the jury that the articles in question were not "wearing apparel" under Schedule C of the act, but were manufactures of worsted, cotton, and silk under Schedule D of the act, and were, therefore, chargeable with a duty of only twenty-five per cent. A verdict was found for the plaintiffs, and the defendant now moved for a new trial, on a bill of exceptions.

Benjamin F. Butler, for defendant.
Francis B. Cutting, for plaintiffs.

NELSON, Circuit Justice. We are of opinion that the shawls and scarfs in question come within the description of "wearing apparel" under Schedule C of the tariff act of July 30th, 1846, and were properly charged with a duty of thirty per cent. This phraseology for the purpose of describing a dutiable article, was used for the first time in the act of 1846, and was introduced for the purpose of describing a class of articles, not as known in trade and commerce by any particular appellation, but by the actual use for which they were designed, and to which they were adapted, taken in connection with the fact that they were made up or manufactured wholly or in part by the tailor, sempstress, or manufacturer. Congress intended to depart from the commercial designation as the test to determine the description within which the duty should or should not be charged, and to leave such determination to the test of the actual use of the article. Hence, the purpose for which it was made, its fitness and adaptation as an article of dress, and the actual use of it, are the proper subjects of inquiry in determining whether it comes within the clause in question; not the name or description by which it may be known to the manufacturer, or importer, or others dealing in the article. Is the article wearing apparel in point of fact, made up or manufactured by the tailor, sempstress, or manufacturer? That is the question to be determined for the purpose of ascertaining the rate of duty. The words are used in their natural and ordinary sense, and are to be so interpreted by the court. A new trial must be granted, with costs to abide the event.

[Upon the new trial there was a verdict for the defendant. The case was then taken to the supreme court upon error where the judgment was affirmed 16 How. (57 U. S.) 251.]